McNEES WALLACE & NURICK LLC
Jonathan H. Rudd
Attorney I.D. No. PA 56880
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
Phone: (717) 237-5405
Fax: (717) 260-1737
jrudd@mwn.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALBERT J. GOLFIERI<br>White Deer Pike 786<br>White Deer, PA 17887<br>     Plaintiff | : <br> : <br> : <br> : <br> : <br> : <br> : | |
| v. | : <br> : | No. |
| WYETH COORDINATED BARGAINING<br>RETIREMENT PLAN – U.S., and TRUSTEES<br>OF THE WYETH COORDINATED<br>BARGAINING RETIREMENT PLAN TRUST,<br>c/o PFIZER INC.<br>235 East 42nd Street<br>New York, NY 10017-5755<br>     Defendants | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | |

# **COMPLAINT**

## **PARTIES**

1. Plaintiff is Albert J. Golfieri ("Golfieri"), an adult individual with a principal place of residence at White Deer Pike 786, White Deer, Union County, Pennsylvania, 17887.

1

2.  Defendants are Wyeth Coordinated Bargaining Retirement Plan – U.S. (the "Plan") and the Trustees of the Wyeth Coordinated Bargaining Retirement Plan Trust (the "Plan Administrator"), with a principal place of business c/o Pfizer Inc., 235 East 42nd Street, New York NY 10017-5755.

## JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over this action in accordance with 2829 U U.S.C §1331, in that this matter involves claims pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§1132(a)(3) and (c)(1). This Court has jurisdiction pursuant to 29 U.S.C. §1132(e)(1).

4.  Venue is proper in this District in accordance with 28 U.S.C. §1391(b) and 29 U.S.C. §1132(e)(2), in that a substantial part of the events giving rise to the claim occurred in this District and Defendant may be found in this District.

## FACTUAL BACKGROUND

A.  <u>Golfieri's Employment and Retirement</u>

5.  Golfieri is a former employee of American Home Products Corporation ("AHPC"). Golfieri began his employment with AHPC in or about August 29, 1988.

6.  Golfieri suffered a work related disability and ceased to be employed by AHPC in early 2001.

7.  While employed by AHPC, Golfieri participated in the American Home Products Corporation Bargaining Retirement Plan – United States.

8. In or about March 2002, AHPC changed its name to Wyeth and Golfieri believes and avers that the name of the retirement plan was also changed from American Home Products Corporation Bargaining Retirement Plan – United States to Wyeth Coordinated Bargaining Retirement Plan – U.S.

9. The Plan Administrator and Named Fiduciary of the Wyeth Coordinated Bargaining Retirement Plan – U.S. is the Trustees of the Wyeth Coordinated Bargaining Retirement Plan Trust.

10. In or about October 2009, Pfizer Inc. acquired Wyeth and took over responsibility for the Wyeth Coordinated Bargaining Retirement Plan – U.S.

11. The Pfizer Benefits Center ("PBC") is the agent of the Plan Administrator for purposes of administering the Plan and performing the duties of the Plan Administrator under the Plan.

B. <u>Notice from PBC to Golfieri of Additional Benefits Due to Golfieri</u>

12. On October 30, 2020, PBC sent Golfieri a letter stating that its records indicated that Golfieri "may have a benefit due" and that "[t]o begin receiving your pension benefit, please call and a benefits representative will be happy to assist you." A copy of this letter is attached hereto as Exhibit 1.

13. The October 30, 2020 letter goes on to state that: "If you do not call, your pension benefit will automatically be paid to you according to your plan's default option based on your marital status in our system. . . .   To ensure that you continue to receive future mailings regarding your benefits, please log on to Fidelity NetBenefits to update your mailing address accordingly."  (Exhibit 1).

14. Subsequent to receipt of the letter of October 30, 2020, Golfieri set up an online account at Fidelity NetBenefits as referenced in the letter of October 30, 2020.

15. After creating the online account Golfieri was able to review the information regarding the benefits to which the Plan Administrator represented that he was entitled to receive. The online information indicated that he was entitled to additional benefits and he had to make a selection as to the form of benefit.

16. While accessing his online account Golfieri ran different options for receipt of his additional retirement benefits and then selected the lump sum option and initiated a request for benefits.

17. In response to the election for benefits that he had made through the NetBenefits online platform, PBC sent Golfieri a letter dated December 16, 2020. A copy of this letter is attached hereto as Exhibit 2.

18. The letter of December 16, 2020 opens up with the statement that: "Thank you for contacting us about modeling your pension benefits. We are providing you with the calculated estimated benefit(s) payable for the specific scenarios you requested." The letter goes on to state that: "Your calculation results are presented in the section titled Your Pension Benefit Modeling Statement attached to this letter."

19. The "Your Pension Benefit Modeling Statement" starts off with the statement: "This statement outlines the benefits you are eligible for and the payment options available." The Modeling Statement is broken down into various sub-categories. The first sub-category is "Your Benefit Data as of December 1, 2020."

This sub-category starts off with the statement that: "We have based your estimated pension benefit calculations on the information below. You should verify the accuracy of this information, as it may affect your actual payments." This section also states that the "Earliest Commencement Date: (Earliest date you were eligible to receive your entire benefit from the Plan) is 1/1/2010." The second sub-category is the "Your Modelling Assumptions." This section begins with the statement that: "The following information was used for the purpose of calculating your benefit payment amounts." The third sub-category lists "Your Payment Options" and provides that: "In this section, we have listed the payment options available to you. • The lump sum payment option is a one-time payment to you with no additional payment to a beneficiary after your death." The Lump Sum payment option clearly states that there is a "One-time payment to you: $57,767.81". This option is valued as of January 1, 2010.

20. Based on the clear and unequivocable representations set forth in the December 16, 2020 letter that he was entitled to additional benefits in the amount of $57,767.81 as of January 1, 2010, Golfieri requested the lump sum payment option.

21. Golfieri subsequently received a letter from PBC dated March 25, 2021 after he had followed up on the status of the payment of the lump sum payment that the Plan Administrator represented was due to him in the amount of $57,767.81 as of January 1, 2010. A copy of this letter is attached hereto as Exhibit 3.

22. In the letter of March 25, 2021, PBC claimed that: "There are no further benefits due to you from the Plan."

5

23. Although the March 25, 2021 letter references a prior lump sum distribution made in 2003, nowhere does it address the repeated representations that Golfieri was entitled to an additional benefit as of January 1, 2010 in the lump sum amount of $57,767.81.

24. Nowhere in the letter of March 25, 2021 is there any explanation as to the reason the Plan Administrator contacted Golfieri about the additional benefit due to him in the lump sum amount of $57,767.81 and how there were no further benefits due to Golfieri when just a few months earlier the Plan Administrator had represented that there were $57,767.81 in additional benefits due to him as of January 1, 2010.

    C.    <u>Golfieri's Request for Additional Information</u>

25. Golfieri believes that there was a rational basis for the Plan Administrator contacting him in October 2020 about the additional retirement benefits to which he was entitled.

26. Golfieri acknowledges that he did receive a lump sum retirement benefit of $29,092.33 in 2003. However, he never understood the basis for the manner in which his retirement benefit was calculated. The benefit calculation form received in 2003 indicated that the last day he worked was 11/1/96 despite that he continued to be employed with AHPC until into early 2001.

27. Golfieri was disabled at the time he ceased employment with AHPC. Golfieri understood that the American Home Products Corporation Bargaining Retirement Plan – United States contained additional benefits for a disability retirement. However, there was nothing on the benefit calculation form from 2003 referencing his disability.

28. Golfieri reasonably believed that the Plan, Plan Administrator and/or some third party had performed an audit or some other type of review of retirement benefits owed to individuals previously employed by AHPC and discovered that Golfieri was due additional retirement benefits because of the error in the last day worked reflected on the 2003 benefit calculation form and/or the failure to have taken into account Golfieri's disability in calculating the retirement benefits paid out in 2003.

29. Regardless of the reason the Plan Administrator contacted Golfieri by sending him the unsolicited letter of October 30, 2020, he believes that there was a valid basis for the Plan Administrator's determination that Golfieri was entitled to additional benefits from the time period he was employed with AHPC.

30. In reliance on the original representations made to him that he was entitled to an additional retirement benefit of $57,767.81 as of January 1, 2010 and the lack of any explanation for the Plan Administrator's conduct in representing to him that he was entitled to an additional retirement benefit of $57,767.81 as of January 1, 2010, Golfieri retained an attorney to follow up with the Plan Administrator as to his entitlement to the additional retirement benefits.

31. On March 15, 2022, Golfieri's attorney sent a letter to the Plan Administrator in care of its agent PBC demanding the additional retirement benefits that the Plan Administrator had represented were due to Golfieri.  A copy of this letter (without exhibits that are separately attached to this Complaint) is attached as Exhibit 4.

32. The March 15, 2022 letter was received by PBC on March 16, 2022. See FedEx confirmation attached as Exhibit 5.

33. In the letter of March 15, 2022, Golfieri's attorney stated in part that:

We hereby demand the immediate payment of this additional benefit together with interest. To the extent that Pfizer persists in its claim that this promised benefit is no longer due, then we demand the following:

1. A specific and detailed statement as to all facts that lead Pfizer to represent in its letter of October 30, 2020 that: "Our records indicate that you may have a benefit due."

2. The production of all records that lead Pfizer to represent in its letter of October 30, 2020 that: "Our records indicate that you may have a benefit due."

3. All records that were used to calculate the lump sum payment option of $57,767.81 as represented in the letter of December 16, 2020, including the formula and all figures used in the formula.

4. All records that were used in determining that the Earliest Commencement Date: (Earliest date you were eligible to receive your entire benefit from the Plan) is 1/1/2010, as set forth in the letter of December 16, 2020.

5. A copy of the Plan Document and Summary Plan Description for the Plan under which Pfizer determined that an additional benefit may be due as stated in the letter of October 30, 2020.

6. If different from the documents requested in item 5 above, a copy of the Plan Document and Summary Plan Description for the Plan that was used to calculate the lump sum payment option of $57,767.81 as represented in the letter of December 16, 2020.

7. If different from the documents requested in item 5 above, a copy of the Plan Documents and Summary Plan Descriptions for the Plans that were in place when Mr. Golfieri's benefits accrued, including up to the time he retired.

(Exhibit 4).

34. The Plan Administrator did not respond to the letter from Golfieri's attorney within thirty days as required by 29 U.S.C. §1132(c)(1).

35. The Plan Administrator finally responded to the letter from Golfieri's attorney three months later when it sent a letter to Golfieri dated June 13, 2022. A copy of this letter is attached as Exhibit 6.

36. The letter of June 13, 2022 was not copied to Golfieri's counsel despite that the Plan Administrator was well aware that Golfieri was represented by counsel.

37. The letter of June 13, 2022 makes no reference to the letter from Golfieri's counsel dated March 15, 2022 and was completely unresponsive to the demands made in the letter from Golfieri's counsel dated March 15, 2022.

38. The letter of June 13, 2022 did not include any of the documents requested by Golfieri's counsel in his letter dated March 15, 2022.

39. At no time since March 16, 2022 when the Plan Administrator received the letter from Golfieri's counsel has it provided any of the documents requested by Golfieri's counsel in his letter dated March 15, 2022.

40. The only added information contained in the letter of June 13, 2022 that was not previously stated by the Plan Administrator in its letter of March 25, 2021 is that: "Due to an administrative error, we mailed you the modeling statement dated December 16, 2020, and the Minimum Required Distribution letter dated October 30, 2020." (Exhibit 6).

41. Nowhere in the letter of June 13, 2022 does the Plan Administrator explain how an administrative error could result in contacting a Plan participant over sixteen years after it had made a prior distribution and then providing detailed information both on its online platform and in the letter of December 16, 2020 as to a specific lump sum amount that was payable to Golfieri.

42. Nowhere in the letter of June 13, 2022 does the Plan Administrator provide or explain the records that it used and relied upon to make the initial determination that benefits were due to Golfieri.

43. Nowhere in the letter of June 13, 2022 does the Plan Administrator provide or explain the records that it used and relied upon to calculate the lump sum payment option of $57,767.81 as represented in the letter of December 16, 2020.

44. Nowhere in the letter of June 13, 2022 does the Plan Administrator provide or explain the records that it used and relied upon in determining the Earliest Commencement Date:  (Earliest date you were eligible to receive your entire benefit from the Plan) is 1/1/2010, as set forth in the letter of December 16, 2020.

45. As of the filing of this Complaint, the Plan Administrator has still not provided Golfieri with the requested Plan Document and Summary Plan Description for the Plan under which it determined that an additional benefit may be due as stated in the letter of October 30, 2020.

46. As of the filing of this Complaint, the Plan Administrator has still not provided Golfieri with the requested Plan Document and Summary Plan Description for the Plan that was used to calculate the lump sum payment option of $57,767.81 as represented in the letter of December 16, 2020.

47. As of the filing of this Complaint, the Plan Administrator has still not provided Golfieri with the requested Plan Document and Summary Plan Description for the Plans that were in place when Golfieri's benefits accrued, including up to the time he retired.

## COUNT I – CLAIM FOR APPROPRIATE EQUITABLE RELIEF UNDER 29 U.S.C. §1132(a)(3)

48.     Plaintiff incorporates herein by reference paragraphs 1 through 47 above as if set forth herein at length.

49.     ERISA Section 502(a)(3) [29 U.S.C. §1132(a)(3) authorizes a "participant, beneficiary, or fiduciary" of an employee benefit plan to bring a civil action to obtain "appropriate equitable relief" to redress violations of ERISA Subchapter I, including, but not limited to, fiduciary breaches.

50.     Golfieri is a participant in the Plan.

51.     Golfieri is asserting a claim for promissory estoppel as the appropriate equitable relief permitted under Section 502(a)(3).   See Sullivan-Mestecky v. Verizon Communications Inc., 961 F.3d 91 (2nd Cir. 2020).

52.     The five elements of a claim for estoppel under Section 503(a)(3) are as follows:

(1) a promise,

(2) reliance on the promise,

(3) injury caused by the reliance,

(4) an injustice if the promise is not enforced, and

(5) extraordinary circumstances

53.     All five elements of a claim for estoppel are present in the instant situation.

54.     The Plan Administrator repeatedly promised Golfieri that he was entitled to additional benefits and that it would be making payment of the additional benefits. The initial letter sent to Golfieri expressly stated that if Golfieri did not call, "your

11

pension benefit will automatically be paid to you according to your plan's default option based on your marital status in our system."

55. Golfieri relied on the promise of additional benefits in pursuing recover of the additional benefits and in making life decisions regarding the additional $57,767.81 the Plan Administrator promised would be paid to Golfieri.

56. Golfieri has been injured as a result of the Plan's breach of its promises to Golfieri in that he has now expended additional money pursuing recovery of the benefits that were promised and has had to alter life decisions now that the promised additional benefits were not received.

57. It would be an injustice for the Plan to avoid paying the benefits it repeatedly promised were due to Golfieri since a pension plan should not be permitted to create false hope in retired participants that they are entitled to receive additional benefits only to dash these hopes after plans were made based on these promises.

58. This situation involves an extraordinary circumstance.  The Plan's and Plan Administrator's conduct in completely ignoring the request from Golfieri's counsel as to the manner in which the Plan could allegedly have made such an error is truly extraordinary.  Plans and Plan Administrators do not ordinarily decide to raise the hopes of retired participants by sending them false letters explaining the additional benefits to which they were entitled without there being some event that prompted them to take such action.  It is extraordinary that the Plan Administrator would not explain the event that led to it sending what it now claims are false letters and creating false information on its online platform indicating that Golfieri was entitled to an additional benefit of $57,767.81.  This is not a situation where the Plan and Plan

Administrator simply made a typographical error in representing the amount that was payable, which is the type of administrative error that might be excused. This situation goes well beyond an administrative error and involves an apparent "cover up" of some event that caused the Plan and Plan Administrator to contact Golfieri after so many years and falsely promise an additional benefit. Considering the questionable basis of the original benefit calculation in 2003, it was incumbent on the Plan and Plan Administrator to fully explain the basis for their prior conduct in representing to Golfieri that he was entitled to an additional $57,767.81. If for no other reason, Golfieri should be entitled to know the basis for the prior determination that he was entitled to additional benefits so that he and his counsel can fully investigate to determine if there is a legitimate basis under the governing Plan documents for the payment of additional benefits. Golfieri is not required to simply accept the Plan Administrator's claim that there was an error without receiving the requested information to determine if there was such an error or if the Plan is simply engaging in a "cover up".

59. Golfieri meets all of the requirements to estop the Plan from denying him the benefits which were promised to him.

60. The Plan Administrator is in breach of its fiduciary duties in failing to pay Golfieri the benefits that it promised were due to him.

61. Golfieri should be paid all of the promised benefits, which should be adjusted to their present value based on interest from January 1, 2010 to the date paid in accordance with the interest rate provided for in the Plan documents or other actuarial formula used by the Plan's actuaries in calculating the present value of benefits that were initially calculated as of a date that has now passed.

62. The Plan and Plan Administrator acted in bad faith and/or culpably in refusing to pay Golfieri the promised benefits and refusing to provide any explanation for their conduct in promising to pay Golfieri the additional benefits.  For all of the foregoing reasons, Golfieri is entitled to the additional benefits or alternatively, a detailed explanation as to the basis for the Plan's decision so that he and his attorney can fully investigate his rights to additional benefits and the merits of the Plan's and Plan Administrator's position.  The Plan and Plan Administrator provided neither to Golfieri.

63. The Plan and Plan Administrator should be required to pay Golfieri all attorneys' fees and costs incurred in this matter pursuant to 29 U.S.C. §1132(g)(1) and the standard established by the Third Circuit for the award of attorneys' fees in these types of cases.

WHEREFORE, Plaintiff Albert J. Golfieri demands judgment in his favor and against Defendant Wyeth Coordinated Bargaining Retirement Plan – U.S. and the Trustees of the Wyeth Coordinated Bargaining Retirement Plan Trust for appropriate equitable relief as requested above, together with attorneys' fees and costs.

## COUNT II – CLAIM FOR PENALTY UNDER 29 U.S.C. §1132(c)(1)

64. Plaintiff incorporates herein by reference paragraphs 1 through 63 above as if set forth herein at length.

65. Golfieri, through his counsel, requested documents that the Plan Administrator was required to provide under Sections 502(c)(1) and 104 of ERISA, and/or 29 CFR §2560.503-1. Specifically, Golfieri requested:  (a) the Plan Document

and Summary Plan Description for the Plan under which it determined that an additional benefit may be due as stated in the letter of October 30, 2020; (b) Plan Document and Summary Plan Description for the Plan that was used to calculate the lump sum payment option of $57,767.81 as represented in the letter of December 16, 2020; and, (c) Plan Document and Summary Plan Description for the Plans that were in place when Golfieri's benefits accrued, including up to the time he retired.

66.     Golfieri also requested documents from the claims review file maintained by the Plan Administrator that it is required to produce in accordance with the requirements of 29 CFR §2560.503-1.

67.     The Plan Administrator was required to provide the requested documents within 30 days of the request being received on March 16, 2022.

68.     The Plan Administrator has failed to produce any of the requested documents.

69.     In accordance with Section 502(c)(1) of ERISA, as modified in amount by 29 CFR §2575.502c-1, the Plan Administrator should be required to pay Golfieri $110 per day from April 15, 2022 to the date it finally produces the documents, together with such other relief that the Court deems proper.

70.     The Plan Administrator acted in bad faith and/or culpably in refusing to provide Golfieri the documents he requested and was entitled to receive under 29 U.S.C. §1132(c)(1).

71.     The Plan Administrator should be required to pay Golfieri all attorneys' fees and costs incurred in pursuing this Section 502(c)(1) claim pursuant to 29 U.S.C.

§1132(g)(1) and the standard established by the Third Circuit for the award of attorneys' fees in these types of cases.

WHEREFORE, Plaintiff Albert J. Golfieri demands judgment in his favor and against Defendant the Trustees of the Wyeth Coordinated Bargaining Retirement Plan Trust for the statutory penalty and other relief the Court deems proper as requested above, together with attorneys' fees and costs.

Respectfully submitted,

McNEES WALLACE & NURICK  LLC

By /s/ Jonathan H. Rudd

Jonathan H. Rudd
Attorney I.D. No. PA 56880
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 237-5405
Fax: (717) 260-1737
jrudd@mwn.com

Attorneys for Plaintiff Albert J. Golfieri

Dated: October 3, 2022